ALFRED LESTER MARKS, JR., CYNTHIA MARKS SALLEY AND ELIZABETH MARKS STACK *v.* A. LESTER MARKS, ELIZABETH LOY MARKS AND HERBERT M. RICHARDS, TRUSTEES UNDER THE WILL OF LINCOLN LOY McCANDLESS, DECEASED.

No. 4857.

FEBRUARY 16, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

## I. Facts

Three of the four beneficiaries of a trust created by the will of Lincoln Loy McCandless (hereafter "settlor" or "testator") sued to recover allegedly excessive commissions taken by the three trustees. Plaintiffs contend commissions were limited by the will. Trustees contend the commissions taken were authorized by statute.

The will was duly admitted to probate by the First Circuit Court in P. No. 11582. It created a trust, naming as trustees A. Lester Marks, Elizabeth Loy Marks, James Sutton McCandless (who refused to serve as trustee) and Elizabeth Janet Cartwright McCandless (widow of testator who died before the inception of the trust). Defendants Mr. and Mrs. Marks accepted their nominations to serve as trustees. Under the terms of the will at least three trustees were required. Defendant Richards was appointed as the third trustee by the First Circuit Court.

Under the undisputed terms of the will the three plaintiffs are entitled to receive one-half (one-sixth each) of the trust income and remainder.

Trustee Elizabeth Loy Marks, wife of trustee A. Lester Marks, is the fourth beneficiary of the trust, but she has not joined the other beneficiaries as a plaintiff. By the terms of the will she is entitled to receive one-half the trust income and remainder.

Pursuant to the will's terms, the trust terminated January 13, 1959, when plaintiff Cynthia Marks Salley became twenty-one years of age.

The complaint which began this action was filed March 2, 1964. Trustees answered March 16, 1964. Their answer

550 

contends in part:

"8. In further answer to paragraph 7, defendants say that they are entitled to the full statutory commissions as provided by Section 219-17, R.L.H. 1955, and by reason of the complexity and difficulty in the administration of the trust estate, they are entitled to additional allowance for services rendered in an amount deemed just and reasonable by the Court."

It makes no mention of any counterclaim.

On September 12, 1967, trustees took the deposition of Chaunsey Cleveland who said: (1) that at the request of the trustees in 1949 he appraised the value of the assets of the trust estate at $2,882,032.87; (2) that pursuant to the trustees' request, his appraisal evaluated the trust assets at only 70% of their market value; (3) that his appraisal report to the trustees did not bear any notation that the appraisal was only 70% of market value; (4) that he was unaware of the reasons for underevaluating the property. Mr. Cleveland was asked if the appraisal was to be used to compute taxes; he answered that he did not know. Cleveland's deposition was filed September 29, 1967, along with two others not material here.

On December 1, 1967, trustees filed a pretrial statement saying in part:

"The only controversy in this case involves the amount of commissions payable to the trustees. No other issue is urged in the pretrial statement.

\* \* \* \*

" \* \* \* The value of the principal of the trust at its inception on October 1, 1949 was at least $2,882,032.87. (Deposition of C.F. Cleveland).

\* \* \* \*

## CONCLUSION

"Defendants are entitled to at least the full statutory commissions; the question is whether they are en-

titled to the 1% mentioned in the will in addition to statutory commissions.

"Since this action is without merit as a matter of law, upon entry of judgment defendants will ask that all of the costs, expenses and defendants' attorneys fees be charged against plaintiffs' share in the estate."

On December 18, 1967, trustees moved for summary judgment. On January 10, 1968, plaintiffs moved for summary judgment. On January 11, 1968, oral argument of both motions was heard by Judge Ogata. The clerk's minutes state in pertinent part:

"At 8:44 Mr. Anthony stated that he would waive the ten day notice on motion for summary judgment; that Mr. Anderson had filed his motion for summary judgment on January 10, 1968.

"At 10:14 the court took the motions for summary judgment under advisement and informed counsel that they would be informed when the court was ready to rule."

On January 20, 1968, trustees filed a 5-page "Reply Memorandum" to plaintiffs' motion for summary judgment (which had been orally argued nine days before). It states in part:

"The facts are not in dispute and hence the question should be decided as a matter of law. The undisputed facts are:

\* \* \* \*

" \* \* \* No question was raised by plaintiffs until after the trust had terminated and the trustees had faithfully performed their duties by preserving the estate so that it increased in value from a valuation of approximately $2,800,000 at the date of Mr. McCand-

less' death to approximately $10,000,000 at the time of termination. * * *

* * * *

" * * * Finally, under fundamental principles of equity, the trustees should be allowed at least the full statutory commissions provided by law. In this case the trustees by taking commissions on 70% of the fair value have substantially reduced the amount of compensation which the statute says 'shall be allowed as commissions.' "

Plaintiffs filed an 18 page "Answering Memorandum" on February 9, 1968. Trustees filed a "Supplementary Memorandum" on August 2, 1968. Plaintiffs filed a "Supplemental Memorandum" on August 6, 1968. None of these memoranda mention any claim that the assets were underevaluated.

On August 6, 1968, Judge Ogata orally granted plaintiffs' motion for summary judgment and denied trustees'. The yellow minutes of the clerk do not show any discussion of any underevaluation claim.

On October 14, 1968 (more than two months after Judge Ogata had orally granted plaintiffs' motion for summary judgment), counsel for trustees filed an "Affidavit in Opposition to Plaintiffs' Motion for Summary Judgment", which states in pertinent part:

"that in the event the Court adheres to its earlier ruling, defendants will adduce evidence that the services of A. Lester Marks as full-time manager of the estate were reasonably worth not less than $1,000 per month and the reasonable value of such services should be offset against any claim of overpayment of commissions."

An attached memorandum argues that commissions should be computed at 100% of the trust's inception value, rather than at 70% as appraised by Cleveland. It also argues

that summary judgment "cannot be entered until disputed issues of fact are resolved", including the amount of A. Lester Marks' salary claim; but not including the issue of evaluation of the trust assets, as to which counsel for the trustees states:

"The fact that defendants charged commissions based on 70% of the value is not disputed."

On October 25, 1968, counsel for plaintiffs filed a "Memorandum in Response to Defendants' 'Memorandum in Opposition to the Entry of an Order for Summary Judgment' ". This memorandum argues that the claim of A. Lester Marks for a salary was not raised in any pleadings and suggests that Marks initiate a separate proceeding on his claim. It also argues that the facts regarding evaluation are not in dispute because the trustees never asserted underevaluation as a claim, and because there are references in trustees' memoranda and pleadings to the evaluation without any dispute.

On October 28, 1968 (at 8:30 a.m.), Judge Ogata held a "Hearing on Form of Order on Motion for Summary Judgment". The clerk's minutes state in pertinent part:

"Mr. Anderson submitted argument on the form of order, motion for summary judgment, which he had presented to Mr. Anthony for approval; stated that he believed that the form of the order complied with the oral ruling of the Court.

"At 8:43 Mr. Anthony presented argument; stated that there were no facts presented by the Plaintiffs; no testimony, no Affidavit; question of law as to whether or not the successor trustee was entitled to full statutory commissions.

"At 8:56 the Court stated that the Court followed two or three cases in other jurisdictions which the Court thought was analogous to this case.

"Further argument by Mr. Anthony; stated that he could amend the pleadings.

"The Court stated that it would seem to be rather late, at this stage; that as the Court saw it, the only question which may be disputed would be the valuation.

"At 8:58 Mr. Anderson that [*sic*] there is no dispute as to that; referred to the pre-trial order under Defendants' Admitted Facts, page 8, paragraph 2; presented further argument.

\* \* \* \*

"The Court set hearing on the entry of the order of summary judgment and attorney's fees for 8:30 a.m. Wednesday, November 6, 1968 \* \* \* ."

On October 28, 1968 (at 3:49 p.m.), trustees filed a motion for leave to amend their answer. A copy of trustees' proposed amended answer was attached. Paragraph 9 and 10 of this document clearly articulate both the under-evaluation claim and Marks' salary claim.

On November 6, 1968, plaintiffs filed a "Memorandum in Opposition to Defendants' Motion to Amend Answer", which argues that leave to file was sought too late.

On November 7, 1968, a further hearing was held. The clerk's minutes state in pertinent part:

"The Court stated that there was also the matter of termination of the litigation; that that point was arrived at some time ago; that the Court has been waiting for the filing of the Order to disposition of the legal issue as decided by the Court, based upon the action taken by the Court on the two motions for summary judgment.

"Mr. Anthony stated that it would be impossible to file an Order at this time; only a letter on file.

"The Court stated that as the Court sees it, Mr. Anthony filed a pre-trial statement, and in that he has

indicated to the Court that the only issues in this case, page 2 of the pre-trial statement, filed December 1, 1967, that he states on that page that the only controversy involved is the amount of commissions payable to the Trustees; that based upon the record, the Court noted that in the deposition of Mr. Cleveland there was also a letter to the Estate, and in that letter there was a determination made; that the value of the Estate is $2,882,032; that the Court is going to accept that to be the value.

"Mr. Anthony stated that that was before this controversy.

"The Court stated that the Court did not believe that that could be upset; that the only thing is the value at the termination; that that should be used; that there is no genuine issue.

"Mr. Anthony stated that he had filed an amended answer.

"The Court stated that that is whether or not Mr. Marks should receive compensation over and above the duties of the Trustees; that they would be entitled to the value of the assets; that as to the value of the assets upon distribution, that should be indicated by the books of the trust.

"The Court over-ruled the motion to file the answer, as coming too late; that this is a proceeding on summary judgment.

"Mr. Anthony noted an exception to the Court's ruling.

"Mr. Anderson stated that counsel admitted to the value of the trust at its termination on January 13, 1959 as at least $7,354,432.02.

"At 4:14 respective counsel addressed the Court.

"At 4:16 the Court stated that the Court will find that there is no genuine issue of any material fact

and will allow the use of $7,354,432.02 as being the value of the estate upon termination, unless Mr. Anthony and the Trustees' books show otherwise, in which case that value will be used; that Mr. Anthony can get that information and turn that over to Mr. Anderson; that there should not be a trial on that; that there is the question of attorneys' interests.

"Mr. Anthony stated that there cannot be any interests running until the amount is determined; presented argument.

"At 4:19 Mr. Anderson presented argument; referred to his memorandum; stated that he would recommend that they cut the interest request in half; that he would get that authorization from his clients.

"The Court stated that the Court was going to accept it upon the basis that the Plaintiffs will not insist on the interest—that it be reduced by half.

\* \* \* \*

"The Court's ruling: Denied the motion to amend answer found that the record is clear that the value given the estate by Mr. Cleveland in 1955 [*sic*] to be $2,882,032; that that would be the value of the estate at the inception; that commissions will be ruled accordingly; that based on the amount in the record of seven million some odd dollars, if the books of the trustees show some other value at the termination of the trust, that will be used; interest will be allowed, and the date to be determined, will be based on the books of the trustees, and that will be reduced by half; as to Mr. Anthony's motion for attorney's fees, that will be determined on his memorandum."

On December 20, 1968, Judge Ogata filed an "Order Denying Defendants' Motion to Amend Answer" and also an "Order Granting Plaintiffs' Motion for Summary Judgment".

On December 23, 1968, argument was heard on motions for attorney's fees. The court allowed $25,000 as "fair and reasonable" for plaintiffs' counsel. It denied defendants' counsel's claim:

"As to the claim by Defendants' Counsel, after reviewing the authorities as submitted by Mr. Anderson and by Mr. Anthony, the Court is of the feeling that this is not quite the same as a proceeding for instruction, or one in the nature of a request for instruction, as in those cases where proceedings were based upon submission of facts where clearly the questions submitted for determination were for the benefit of the estate, as such. Those were cases where there was ambiguity in the language of the Will; and because of the ambiguity, raised questions of doubt as to what the Executor or the Trustees should do—before doing. I think this seems to be the distinction, where the Trustee goes ahead and does, and then there is an antagonistic claim or litigation. I think we have a different situation.

"It would seem that policy considerations would require that in this type of a case the defendants should bear the cost of their own attorney's fees, at least. Otherwise, you would have Trustees going ahead and not submitting proceedings or not initiating proceedings for instructions from the Court as to what they should do. And in many cases, there is no discovery made by the beneficiaries or others interested in the estate, so that wrongs, although unintentional, may go undiscovered.

"The Court was hopeful that Counsel would be able to agree on the problem and the Court would not be put in the position of deciding this; but since the Court has to decide, the Court feels that it does not

have any discretion in this case but has to deny the motion of Counsel for the Defendants for fees."

On January 8, 1968, Judge Ogata filed an order which supersedes the order of December 20 granting summary judgment for plaintiffs. It again grants summary judgment for plaintiffs and clearly denies defendants' under-evaluation claim, basing surcharge calculations on the evaluation as made by Cleveland, without reflecting under-evaluation by Cleveland. As to the Marks salary claim it states:

"9. This order is without prejudice to the claim of defendant A. Lester Marks for payment of a salary in addition to commissions for his services as full-time manager of the trust estate."

This order also added this direction to the trustees:

"6. The trustees shall proceed forthwith to wind up the affairs of the trust estate and make final distribution within a reasonable time."

This paragraph is not appealed.

## II. Jurisdiction

By paragraph 9 the trial court directed the entry of judgment as to the plaintiffs' claim against defendant, but without prejudice to defendant A. Lester Marks' claim for a salary. If the Marks claim was "presented" within the meaning of H.R.C.P. Rule 54(b),[1] then this court is

---

[1] H.R.C.P. Rule 54(b) provides:

"When more than one claim for relief *is presented* in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims *only upon an express determination that there is no just reason for delay* and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." (Emphasis added)

arguably without jurisdiction to hear this appeal. *Berkness* v. *Hawaiian Electric Co.*, 47 Haw. 479, 481, 391 P.2d 869, 870 (1964); *Matanuska Valley Lines, Inc.* v. *Neal*, 229 F.2d 136 (9th Cir. 1955); *Southern Parkway Corp.* v. *Lakewood Park Corp.*, 273 F.2d 107 (D. C. Cir. 1959).; *Cold Metal Process Co.* v. *United Engineering & Foundry Co.*, 351 U.S. 445 (1956). Therefore we consider this issue first.

We requested and received supplemental briefs on this question.

Counsel for the trustees argues that the Marks salary claim was presented in the original answer; and that paragraph 8 of this answer is broad enough to include Marks' salary claim. But counsel who drafted the original answer later filed a pretrial statement which makes clear that no one, including defendants' counsel himself, understood the answer to include it. We conclude that the Marks salary claim was not presented by the original answer.

The trial court did not allow leave to amend when counsel sought to present the Marks salary claim by amended answer after summary judgment had been orally granted to plaintiffs.

Counsel for beneficiaries argues that the Marks salary claim, although filed in the record as part of the trustees' motion to amend their answer, "was never formally presented to or placed before the lower court." There is very slight authority on the meaning of "presented".[2]

"Presented" in Rule 54(b) should be read within the context of other rules having a relationship to the problem.

---

[2] In the *Cold Metal Process* case, *supra*, at 450 n.5, the unadjudicated claim had been removed from the trial calendar "without prejudice to either party and subject to reinstatement." Apparently the unadjudicated claim was "presented" within the meaning of Rule 54(b), notwithstanding that it was later removed from the trial calendar without prejudice. Jurisdiction of the appeal was predicated by the court of appeals upon certification in accordance with Rule 54(b). The Supreme Court did not expressly rely upon certification for jurisdiction, but neither did it indicate that the court of appeals was erroneous in thinking certification necessary.

Rule 13(f) uses relevant language:

> "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court *set up* the counterclaim by amendment." (Emphasis added)

Construing these rules together, we hold that a claim is not presented until it is "set up". Normally this is by complaint or answer, therefore leave of court is usually not necessary for claims to be "presented". Marks' salary claim was stated in the proposed amended answer, but it was not allowed to be "set up" as part of this action.

This construction is in accord with the precise language used by the trial court in paragraph 9, *i.e.*, it does not dismiss the Marks claim, it merely cautiously recites that the "order is without prejudice to the claim of defendant A. Lester Marks for payment of a salary", which claim was asserted so late that it was not allowed to be presented in this action.

In short, we accept the beneficiaries' argument that the Marks salary claim was never "presented". Since it was not presented, it is not part of this action except insofar as we review the propriety of the denial of leave to file the amended answer. The merits of the Marks salary claim cannot now be the subject of appeal because they have not been presented. Certification under Rule 54(b) is therefore not necessary for jurisdiction of the appeal.

### III. Denial of Leave to Amend to Assert the Marks Salary Claim

As detailed above, the first mention of a Marks salary claim did not occur until October 14, 1968, and the first attempt to assert this claim in a pleading did not occur until the afternoon of October 28, 1968. This was 4½ years after the answer was filed (on March 16, 1964), eight months after oral argument on both parties' sum-

mary judgment motions was heard (on January 11, 1968), and two months after Judge Ogata announced his decision to grant plaintiffs' motion (on August 6, 1968).

On these facts denial of leave to amend to assert the Marks salary claim was not erroneous. H.R.C.P. Rules 12(h), 13(f); *Julian B. Slevin Co., Inc.* v. *Bartgis Bros. Co.*, 142 F. Supp. 688 (D. Md. 1956); *Kirbens* v. *Wodis*, 295 F.2d 372 at 375 (7th Cir. 1961); *New Britain Machine Co.* v. *Yeo*, 358 F.2d 397 (6th Cir. 1966). As the decision below was without prejudice[3] to Marks' salary claim, justice cannot be said to require that leave to set up the claim be granted.

### IV. The Denial of Leave
### to Amend to Assert the Underevaluation Claim

The original answer did not mention or plead underevaluation.

As detailed above, the first reference to underevaluation in the 1949 appraisal (upon which some part of trustee commissions are calculated) was in Cleveland's deposition filed September 29, 1967. Subsequent documents filed by defendant trustees refer to Cleveland's evaluation without disputing its accuracy. The second reference to underevaluation occurred on January 20, 1968, nine days after oral argument of the summary judgment motions was completed. Neither of these references to underevaluation have the color of an assertion such that they could be termed claims. The first assertion that commissions should be computed at more than Cleveland's evaluation occurred on October 14, 1968, in a memorandum of defendants. The first attempt to plead underevaluation as a claim occurred on the afternoon of October 28, 1968.

---

3 *See* H.R.C.P. Rule 13(a), which differs from Fed. R. Civ. P. Rule 13(a); on the meaning of liquidated, *see Erickson* v. *Volcano Stables & Transportation Co., Ltd.*, 13 Haw. 428, 431 (1901).

Judge Ogata's oral grant of summary judgment for plaintiffs on August 6, 1968, did not mention underevaluation. At the hearing on the morning of October 28, 1968, Judge Ogata seems to have been of the view that it was too late to amend the pleadings, but that valuation might still be disputed. It is unclear whether he referred to inception or termination valuation. On November 7, 1968, Judge Ogata ruled that the court would accept Cleveland's evaluation of $2,882,032, that defendants had accepted it, and that defendant's motion to amend to dispute it was denied.

It should be noted that:

(1) denial of the underevaluation claim would clearly have been improper on summary judgment *if* the claim were properly raised;

(2) unlike the Marks salary claim which is permissive and as to which Judge Ogata stated that there would be no prejudice, it would appear that the evaluation claim cannot be the subject of a separate action as it is a compulsory counterclaim. H.R.C.P. Rule 13.

The standard for allowing an omitted counterclaim to be pleaded is provided by H.R.C.P.

Rule 12(h) provides:

"A party waives all defenses and objections which he does not present * * *."

Rule 13(f) provides:

"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

Rule 15(a) provides:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no pleading is

permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *"

The only Hawaii authority somewhat in point seems to be *Cox* v. *J. M. Tanaka, Inc.,* 46 Haw. 15, 20 n.3, Lewis concurring.

There appears to be no theoretical limit upon when a tardy counterclaim may be allowed by a trial court. It can be allowed even after judgment has been entered. *See* Rule 15(b). However, we are here reviewing a trial court, and some discretion is vested in the trial court's hands, for both Rule 13(f) and 15(a) require leave of court.

There was no allegation here of "oversight, inadvertence, or excusable neglect". We have found two cases which seem to treat "when justice requires" as an independent and sufficient ground to grant leave. *Smith Contracting Corp.* v. *Trojan Construction Co., Inc.,* 192 F.2d 234 at 236 (10th Cir. 1951); *Singer Mfg. Co.* v. *Shepard,* 13 F.R.D. 509 (S.D.N.Y. 1952). The weight of authority seems to consider that "oversight, inadvertence, or excusable neglect" are stronger more affirmative grounds on which to base a grant of leave than is "when justice requires." *New Britain Machine Co.* v. *Yeo, supra; Kirbens* v. *Wodis, supra; Larson* v. *Arnold E. Verdi Trucking Inc.,* 28 F.R.D. 377 (E.D. Pa. 1961); *Continental Gin Co.* v. *Freeman,* 39 F.R.D. 351 (N.D. Miss. 1965), *aff'd,* 381 F.2d 459 (5th Cir. 1967). The latter view would appear to be more in accord with the policy that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." H.R.C.P. Rule 1; *cf. Dalton* v.

*City and County of Honolulu*, 51 Haw. 400, 462 P.2d 199 (1969) (on laches).

Three cases, *Kirbens, New Britain Machine Co.*, and *Continental Gin Co.*, affirm denials of leave to amend where the judgment had been announced or entered before the motion to amend was made. It would seem sound to take a more critical view of such motions after decisions are announced.

In view of the length of delay (4½ years), the absence of any allegation of "oversight, inadvertence, or excusable neglect", and the fact that the result had been announced before the amendment was sought, we hold that the trial court's denial of leave to amend was not reversible error.

## V. The Amount of Compensation to Which the Trustees Were Entitled

The instrument which created the trust provides in part:

> *"TWENTY-FIFTH:* Having made provision in this my will for all of the persons herein named as Trustees, I direct that if they accept appointment as such Trustees that their compensation as such Trustees shall not exceed one percent (1%) of the moneys received by them, said compensation to be divided among said Trustees equally unless they agree otherwise * * *."

During the term of the trust, none of the defendant-appellants took any portion of the 1% commissions under Article Twenty-Fifth. Instead, they took and divided among themselves virtually the full statutory commissions. R.L.H. § 607-18 (1968).

We affirm the trial court's holding that:

(1) defendants Mr. and Mrs. Marks, as named trustees under the will of the testator, were limited by the terms of the will to one-third of one percent (1%) each of the

moneys received by them to the exclusion of the statutory commissions;

(2) defendant Richards, as a successor trustee, was not limited by the terms of the will but was, however, limited to one-third of the statutory commissions.

Two of the trustees named in the will chose to accept the testator's nomination. If they were dissatisfied with the compensation provided in Article 25, they were free to refuse to serve. If they were unsure of the amount to which they were entitled, a prompt remedy was at hand. Having chosen to serve pursuant to the settlor's nomination, they are bound by the settlor's compensation. *In re Rothenberg's Trust,* 136 N.J. Eq. 530, 42 A.2d 767, 770 (1945); *Smith* v. *Stover,* 262 Ill. App. 440 (1931); *In re Nester,* 216 N.Y. 716, 111 N.E. 1092 (1915); *In re Lite's Estate,* 142 Misc. 793, 255 N.Y.S. 536 (1936); *see* 19 A.L.R.3d 520, 529-536 (1968); 3 Scott, *Trusts* § 242.4 at 2119 (3d ed. 1967). The settlor required at least three trustees. Therefore the two named trustees who chose to serve should receive no more than two-thirds of the settlor's compensation.

The terms of Article 25 are expressly applicable only to named trustees. Therefore Richards, a successor trustee appointed by the court, is entitled to compensation under HRS § 607-18.[4] The statutory rates of compensation are the total to which three successor trustees would be entitled. Common sense and sound authority limit Richards' commissions to ⅓ the statutory amount since he is but

---

[4] "It is a question of interpretation whether a provision that the trustees shall receive a certain sum as compensation is applicable only to the original trustee named by the settlor or whether it is applicable also to successor trustees. If it is applicable to successor trustees, such trustees are not entitled to greater compensation unless it is determined by the court that it is impossible or impracticable to find a person qualified who is willing to act as trustee for such compensation." (Citation omitted)

3 Scott § 242.2 at 2121.

one of three trustees. *Wright* v. *Wright*, 304 S.W.2d 951 (Tex. Civ. App. 1957); *In re Smith's Will*, 154 N.Y.S.2d 227 (Sur. Ct. 1956).

The trial court computed the amount of the surcharges[5] against each trustee as follows:

| ALM | $126,053.71 |
|-----|-------------|
| ELM | 25,696.21 |
| HMR | 18,430.65 |
| | $170,180.57 |

The trial court held that each trustee should repay to the trust the amount of the surcharge against each. We affirm.[6]

## VI. Attorney's Fees

In the order of January 8, 1969, the trial court granted plaintiff-appellees' motion for attorney's fees payable out of the assets of the trust estate and denied defendant-appellants' motion for attorney's fees. Defendants appeal the denial of their motion.

The trial court's reasoning is quoted in Part I above.

The beneficiaries prevailed upon their claim that the trustees took excessive commissions in violation of their fiduciary duties. If the trustees believed, as they assert, that the provisions of the will were ambiguous, they could and should have brought the matter to court many years ago. Had they done so, their attorney's fees would have been allowed. *Estate of Campbell*, 46 Haw. 475, 522 (1963); *In Re Dean Trust*, 47 Haw. 629, 649 (1964). Trustees should not be encouraged to construe ambiguous

---

5 These computations were based in part upon 3% interest which rate and time of interest is not here the subject of appeal. *Cf. Lucas* v. *L & M*, 51 Haw. 346, 461 P.2d 140 (1969).

6 There was no contention that the trustees were jointly liable. Therefore we do not reach this issue. *See* 3 Scott § 224 at 1785.

provisions to their personal profit.[7] Their attorney's fees to defend an action to recover excessive commissions were properly denied.

J. Garner Anthony (Anthony & Waddoups of counsel) for defendants-appellants.

Martin Anderson and Conrad M. Weiser (Jenks, Kidwell, Goodsill & Anderson of counsel) for plaintiffs-appellees.

[7] The long delay in this case makes it difficult, if not impossible, for a court to reconstruct a proper accounting of this trust. If the trustees had been allowed to assert underevaluation, would the last twenty years of taxes ever be recomputed? If these taxes were now paid, wouldn't this affect virtually every payment made to beneficiaries and trustees over the past twenty years?