# Kenneth E. Stratton and Erlesca H. Stratton v. V. Thomas F. Steele, Sr., Individually and as President of IBG, Inc.

[472 A.2d 1237]

No. 82-259

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ

Opinion Filed January 6, 1984

32

*Joseph M. O'Neill*, Rutland, for Plaintiffs-Appellees.

*Robert S. Burke* of *Richard E. Davis Associates, Inc.*, Barre, for Defendant-Appellant.

Peck, J. On July 15, 1980, plaintiffs filed suit to collect on an unsecured note executed by defendant in the principal amount of $13,500. At the hearing on a motion for summary judgment filed by the plaintiffs, defendant moved to amend his answer in order to assert a previously omitted counterclaim alleging unjust enrichment. Defendant's motion was denied and summary judgment granted for plaintiffs. Defendant appeals to this

Court. The sole issue presented for review is the propriety of the trial court's denial of his motion to amend. The essential facts are not in dispute and are incorporated into the discussion below. We affirm.

V.R.C.P. 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Defendant urges that this provision must be read in conjunction with V.R.C.P. 15(a), which provides the less stringent directive that leave to amend "shall be freely given when justice so requires." Plaintiffs contend that V.R.C.P. 13(f) sets up a standard for allowing assertion of omitted counterclaims that is independent of the standard and policy of V.R.C.P. 15(a) for amendments in general.

Authorities commenting on Rules 13(f) and 15(a) of the Federal Rules, substantially similar to their Vermont counterparts, have suggested that the variation in wording between the two rules does not lead to different standards. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1430, at 159 (1971). Although there are cases to the contrary, see, e.g., *Morrison* v. *Wyrsch*, 93 N.M. 556, 558, 603 P.2d 295, 297 (1979), and federal cases cited therein, our research indicates that the mutual application of Rules 13(f) and 15(a) is the more widely accepted practice in the federal courts, and has been adopted by at least two other appellate courts. *T. J. Stevenson & Co.* v. *81,193 Bags of Flour*, 629 F.2d 338, 370 n.68 (5th Cir. 1980); *Mercantile Trust Company National Association* v. *Inland Marine Products Corp.*, 542 F.2d 1010, 1012 n.5 (8th Cir. 1976); *Smith Contracting Corp.* v. *Trojan Construction Co.*, 192 F.2d 234, 236 (10th Cir. 1951); *Becker* v. *Computer Sciences Corp.*, 541 F. Supp. 694, 698 (S.D. Tex. 1982); *Randolph* v. *Franklin Investment Co.*, 398 A.2d 340, 350 (D.C. 1979); *Marks* v. *Marks,* 51 Hawaii 548, 562–63, 465 P.2d 996, 1004 (1970). The underlying rationale of these cases favors the resolution of disputes on their merits without hindrance by procedural technicalities. See *Bevins* v. *King*, 143 Vt. 252, 255, 465 A.2d 282, 283 (1983).

We find the logic of these cases persuasive; accordingly, we agree with the defendant's position. There is no in-

dication that V.R.C.P. 15 (a) applies to less than all the amendments provided for in the Civil Rules. While V.R.C.P. 13 (f) provides specific instances in which leave to amend may be granted, it does not create a stricter standard than that embodied in V.R.C.P. 15 (a).

Further, it is noteworthy that, absent a showing of prejudice, Vermont courts have traditionally followed a liberal policy in considering motions to amend that predates the adoption of our Rules of Civil Procedure. *City Electrical Service & Equipment Co.* v. *Estey Organ Co.*, 116 Vt. 435, 436–37, 77 A.2d 835, 836 (1951) ; *Tracy* v. *Vinton Motors, Inc.*, 130 Vt. 512, 513–14, 296 A.2d 269, 271 (1972) (holding that the policy of liberality in allowing amendments to the pleadings has not been abrogated by the Rules of Civil Procedure). We hold nevertheless that on the record here, neither our general policy nor the rules of procedure are sufficient to compel a reversal of the trial court's ruling.

██ Notwithstanding Vermont's general policy of liberality, motions to amend fall within the scope of the trial court's discretion. *Pond* v. *Carter*, 126 Vt. 299, 310, 229 A.2d 248, 256 (1967) (pre-V.R.C.P.) ; *Bevins* v. *King, supra* (post-V.R.C.P.). As such, rulings will not be disturbed unless it appears that the trial court withheld or abused its discretion. *Id.* For example, it may be an abuse of discretion to deny a motion to amend if there is no prejudice to the objecting party and the proposed amendment is neither frivolous nor made as a dilatory maneuver or in bad faith. *Id.* This Court has not yet had the opportunity to apply those standards to rulings on omitted counterclaims. However, factors that should be considered in such an application include the reason for the omission, whether the pleading states a cause of action, and whether the claim may be barred in future litigation. With this in mind we turn to the facts in the case at bar.

██ At the hearing below, defendant argued that his proposed counterclaim was compulsory under V.R.C.P. 13 (a). Federal authorities are in accord that failure to raise a compulsory counterclaim will result in a bar to future litigation of the claim under the doctrine of res judicata. 3 J. Moore, Moore's Federal Practice ¶ 13.12[1] (2d ed. 1983) ; 6 C.

Wright & A. Miller, *supra*, § 1417. In Vermont, the rule. barring subsequent litigation of claims arising out of a cause of action that was previously litigated is also recognized under the doctrine of collateral estoppel and res judicata. *Gilmour* v. *State*, 141 Vt. 640, 642, 450 A.2d 1153, 1154 (1982) ; *Jensen* v. *State*, 136 Vt. 200, 201, 388 A.2d 421, 422 (1978). Defendant feared that denial of his motion to amend in order to assert the counterclaim would bar any possibility of raising it in the future.

■ The essence of a compulsory counterclaim is that it must "[arise] out of the transaction or occurrence that is the subject matter of the opposing party's claim." V.R.C.P. 13(a). Cases in this jurisdiction, however, give little guidance as to what constitutes the same "transaction or occurrence." Although precise definitions are difficult to extract from the federal cases, most look to whether the counterclaim bears a "logical relationship" to the claim of the opposing party. 3 J. Moore, *supra*, ¶ 13.13; 6 C. Wright & A. Miller, *supra*, § 1410. We adopt that test today.

> [A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses : (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Revere Copper & Brass Inc.* v. *Aetna Casualty & Surety Co.*, 426 F.2d 709, 715 (5th Cir. 1970).

Applying this test to the case at bar, defendant's pleading fails to pass muster as a compulsory counterclaim. Defendant's allegation, a claim for unjust enrichment, is actually a claim for restitution sounding in quasi contract. The claim alleges that defendant expended funds and effort in the development of a housing complex. He further alleges that as a result of those efforts, "plaintiffs were able to take title to an undivided one-half interest in said land and premises valued at One Hundred Forty Thousand Dollars ($140,000.00) free and clear of any mortgages or encumbrances."

■ Assuming, without deciding, that defendant's claim stated a cause of action, the contract it seeks to imply is separate and apart from the note executed by him to plaintiffs. This is true even though the funds received under the note were allegedly used in the construction of the development. This is not an instance in which the claim of unjust enrichment would be a defense to an action on the note, nor do the rights of the parties in one action affect their rights in the other. Thus, there is no logical relationship between the quasi contract for restitution and the contract on the note that would satisfy the requirements of V.R.C.P. 13(a). Had the housing complex been mortgaged as security for the note, the nexus between the counterclaim and the note would be much stronger. See, e.g., *Ohio River Co.* v. *Kentucky-Indiana Corp.*, 94 F.R.D. 161 (S.D. Ohio 1982). At best, defendant's counterclaim here is only permissive, V.R.C.P. 13(b), and is not in danger of being barred in a later action by res judicata.

■ Both compulsory and permissive counterclaims are included in the amendment provisions of V.R.C.P. 13(f) and 15(a). Nevertheless, there are limits to the liberal application of these rules; motions to amend may be denied if they have been unreasonably delayed, causing prejudice to the opposing party. *Commonwealth* v. *Pace*, 64 Pa. Commw. 273, 439 A.2d 1320, 1321 (1982).

In *Owens-Illinois, Inc.* v. *Lake Shore Land Co.*, 610 F.2d 1185, 1188 (3d Cir. 1979), the court upheld the denial of a motion to amend to assert a counterclaim because there had been a delay of seven months in filing the motion, and allowing the counterclaim would have set off a new wave of discovery. Moreover, there was reason to believe the counterclaim was interposed at that late date to delay resolution of the case. The court in *Imperial Enterprises, Inc.* v. *Fireman's Fund Insurance Co.*, 535 F.2d 287, 293 (5th Cir. 1976), denied a motion to assert an omitted counterclaim because defendant had been aware of the facts underlying the claim for almost a year before moving to amend his answer, and no justifiable excuse for the delay was given.

■ Similar circumstances exist in the present case. Plaintiffs' complaint was filed and answered in July of 1980. Defendant moved to amend his answer to assert defenses of pay-

ment and offset on March 11, 1981. Although the motion was denied as to offset, the grounds therefor were identical to those urged later by defendant in his proposed counterclaim. Addition of the counterclaim, however, was not requested by defendant until April 26, 1982, the day of the hearing on plaintiffs' motion for summary judgment. This was over a year after he had filed his first motion to amend. The court found that defendant failed to show that the delay was the result of "oversight, inadvertence, or excusable neglect." V.R.C.P. 13(f). Indeed, defendant offered no plausible explanation to justify the delay. Although defendant's omission may have been negligent, it was not excusable. His failure to comply with discovery requests resulted in a series of delays over the one year interim. During that period, defendant ignored various orders to compel discovery which resulted in sanctions by the court. Those sanctions effectively eliminated the few defenses he raised. Because of the unreasonableness of defendant's actions, plaintiffs were prejudiced by the unnecessary delay in having their claim resolved expeditiously. The court's discretionary ruling on the motion is amply supported by the record before us.

In view of the nature of the delay caused by defendant in filing his motion, and the absence of any bar to the commencement of an action for restitution at a later date, we cannot find that the court abused its discretion in denying his motion.

*Affirmed.*