**Laurent and Alicia LETOURNEAU v. Charles D. HICKEY and Michael and Susan Judd**

[807 A.2d 437]

No. 01-403

---

July 16, 2002. Plaintiffs Laurent and Alicia Letourneau appeal the superior court's orders granting defendant Charles Hickey summary judgment on plaintiffs' legal malpractice claim, granting defendants Michael and Susan Judd summary judgment on plaintiffs' slander claim, and summarily denying plaintiffs' motion for relief from a judgment in a prior lawsuit involving the Letourneaus and the Judds. We affirm.

The present case arises out of an earlier lawsuit involving a boundary dispute. The Letourneaus and Judds are neighbors who own adjacent agricultural property. The Letourneaus tapped maple trees on land claimed by both parties. The Judds sued the Letourneaus in 1998, seeking a declaration of the boundary line between the parties' properties. Charles Hickey represented the Letourneaus in that case. Following a two-day hearing, the trial court awarded the Judds title to the disputed property. In its May 1999 decision, the court rejected the Letourneaus' adverse possession claim, but determined that the Letourneaus had acquired a prescriptive profit to harvest maple sap from trees in the disputed area. No appeal was taken from that decision. When the Letourneaus failed to pay attorney Hickey for his legal services, he brought a collection action against them and obtained a default judgment in October 1999.

In February 2001, the Letourneaus filed a complaint against attorney Hickey and the Judds, alleging that attorney Hickey had committed legal malpractice during his representation of them in the boundary dispute case, and that Michael Judd had slandered them during his testimony in that case. Further, based on their malpractice claim, the Letourneaus sought relief from the judgment entered against them. In two separate decisions, the superior court granted summary judgment to attorney Hickey and the Judds. The court ruled that the Letourneaus had waived their right to bring the malpractice claim by failing to raise it as a compulsory counterclaim in the collection action. With respect to the slander claim, the court ruled that the allegedly slanderous testimony was privileged, and that, in any case, the Letourneaus had failed to provide evidence of any actual harm. The court also denied the Letourneaus' motion for relief from judgment without explanation in a motion reaction form. On appeal, the Letourneaus argue that the superior court erred by granting summary judgment to attorney Hickey and the Judds, and abused its discretion by dismissing their motion for relief from judgment without holding a hearing or making findings.

In their first claim of error, the Letourneaus argue that the compulsory counterclaim rule of V.R.C.P. 13(a) does not apply to bar their malpractice claim because the judgment against them in the prior collection action was by default. In relevant part, Rule 13(a) provides as follows:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any oppos-

ing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Generally, a counterclaim is compulsory if it bears a "logical relationship" to the opposing party's earlier claim. *Stratton v. Steele*, 144 Vt. 31, 35, 472 A.2d 1237, 1239 (1984). Claims have a logical relationship with each other if the same aggregate set of facts serves as the basis for both claims, and the facts upon which the first claim arises triggers additional legal rights in the defendant that would otherwise remain dormant. *Id.* We have stated that issue and claim preclusion provide the doctrinal support for this rule. *Id.* at 34-35, 472 A.2d at 1239; see *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) (res judicata applies to compulsory counterclaims). The reporter's notes indicate that Rule 13(a) merely identifies what types of claims are compulsory, and that a defendant who fails to assert such a claim is precluded from a later independent action "not by the rule itself, but by way of waiver or estoppel arising from the failure to plead." Reporter's Notes, V.R.C.P. 13.

The Letourneaus do not dispute that their malpractice claim is logically related to the collection action for purposes of Rule 13, but rather rely on another comment in the reporter's notes stating that "a defendant who defaults prior to answer or who submits to a consent judgment is not barred [from raising a compulsory counterclaim], because estoppel should not operate in such circumstances." *Id.* In the Letourneaus' view, their malpractice action is not barred because the judgment in the collection action was by default. The Letourneaus point out that the comment in the re-porter's notes, although merely advisory, is reinforced by the language of Rule 13 providing that a "pleading" must include compulsory counterclaims. According to the Letourneaus, Rule 13 does not apply because they never filed a pleading in the collection action.

As noted, this Court has indicated that res judicata is the theoretical basis for Rule 13(a), while the reporter's notes refer to waiver and estoppel. The more flexible basis of waiver and estoppel gives courts the discretion to allow litigants in later independent actions, under certain circumstances, to raise what would otherwise be compulsory counterclaims from prior actions. See 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1417, at 133-34 (2d ed. 1990). For example, waiver and estoppel might not be applied to bar an otherwise compulsory counterclaim where the parties resolved their dispute by way of a consent judgment acknowledging the absence of the counterclaim, where the court granted the defendant's motion to dismiss before an answer was due, or where the defendant did not knowingly refrain from asserting the counterclaim, such as when an insurance company controls the defense of the first action in the name of a defendant who wants to bring a later action. See *id.* at 133-38.

None of those circumstances exist here. The Letourneaus attempted to evade service in the collection action, and were finally served only after the superior court granted attorney Hickey's request to tack a copy of the summons and complaint to their residence. Despite being served, they failed to file an answer to the complaint, but later filed several pleadings seeking to overturn the resulting default judgment. Approximately twenty-one months later, the Letourneaus filed an independent malpractice action. Rule 13 was not intended to protect defaulting litigants under such circumstances. This is not a situation where the Letourneaus had no realistic oppor-

tunity to file their counterclaim in the prior action, or where the parties voluntarily agreed to a judgment without the counterclaim.

Irrespective of whether the doctrinal underpinning of the compulsory counterclaim rule is res judicata or waiver and estoppel, "courts have given default judgments full effect and have held that a [compulsory] counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits." *Id.* at 134; see *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 160 (2d Cir. 1992); *Estate of Goston v. Ford Motor Co.*, 898 S.W.2d 471, 474 (Ark. 1995). Indeed, in a case involving facts similar to the instant matter, the court stated that it would be "hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought." *Law Offices of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 361 (D.D.C. 1986). There, the court held that the defendant was barred from bringing the malpractice claim in a later action, even though the earlier action had resulted in a default judgment. *Id.* at 362 ("The fact that a party declines to appear does not prevent the default judgment from being set up as res judicata against it, barring subsequent counterclaims."); see *Cianciolo v. Lauer*, 819 S.W.2d 726, 727 (Ky. Ct. App. 1991) ("when one is duly summonsed and suffers a default, he not only loses his right to defend in that litigation, but also his right to assert in an independent action a claim deemed to have been a compulsory counterclaim" under Rule 13).

The same resolution is appropriate here. The Letourneaus' reliance upon *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1083 (7th Cir. 1979), is unavailing, insofar as it concerns a defendant who submitted to a consent judgment in the prior action. To the extent that the reporter's notes comment the Letourneaus rely on is inconsistent with the above analysis, we decline to follow it. See *State v. Machia*, 155 Vt. 192, 196 n.4, 583 A.2d 556, 558 n.4 (1990) (declining to follow comment in reporter's notes suggesting that Vermont Constitution required phrase to be read into V.R.Cr.P. 23).

The Letourneaus also challenge the superior court's ruling on procedural grounds. They argue that, by failing to notify the parties that it intended to treat their motions as ones requesting a summary judgment ruling on the malpractice claim, the court deprived them of an opportunity to present new materials and to amend their complaint if appropriate. We find no merit to this argument. The Letourneaus, who were represented by counsel, filed a motion to strike attorney Hickey's affirmative defenses of estoppel and failure to file a compulsory counterclaim. Attorney Hickey filed a response labeled as a motion in opposition to the motion to strike *or* a cross-motion for summary judgment. The Letourneaus did not file any further response, although they should have been on notice that the superior court would be treating the parties' motions as opposing summary judgment motions on the question of whether Rule 13 applied to bar the malpractice claim. To the extent that such notice was not obvious, we perceive no prejudice. The parties have had a full opportunity to present arguments on the legal question at issue. The Letourneaus' vague suggestions as to what evidence or arguments they might have offered had they known the court was going to treat their motions as requests for summary judgment fail to satisfy their burden of demonstrating prejudice, assuming there was error at all. See *Nevitt v. Nevitt*, 155 Vt. 391, 401, 584 A.2d 1134, 1140 (1990) (party claiming error has burden of demonstrating prejudice by showing what evidence would have produced had court provided opportunity to do so).

Next, the Letourneaus argue that the superior court erred by granting the Judds' motion to dismiss their slander claim. That claim was based on the direct testimony of Michael Judd during the boundary dispute action. In that case, the Judds claimed that the Letourneaus gave them free maple syrup in acknowledgment of the permissive use of their land. The following exchange is the basis for the slander claim:

Q: Do you have any recollection during the period of time Mr. Letourneau was sugaring whether or not your parents ever received syrup from him?

A: I know they did, you know, on occasion, but they weren't real happy with his syrup.

Q: Do you know the specifics of it?

A: Well, he used to use rubber tires sometimes in the arch for, you know, a quick heat, you know, they were a good source of heat and a lot of times the syrup would taste, you know, like rubber tires. It wasn't just Mr. Letourneau; anybody that used rubber tires, it was a chance of it tasting like burnt rubber.

The superior court dismissed the Letourneaus' slander claim because the testimony was privileged and, in any case, the Letourneaus failed to plead any damages. On appeal, the Letourneaus argue that the comments constituted per se slander because they were aimed at their livelihood, and thus they were not required to show actual harm. Further, they argue that the comments were not pertinent to the litigation and thus not privileged.

We conclude that the comments were privileged. A person wishing to sustain an action for slander based on statements made in court

"must show that the words spoken were not pertinent to the matter then in progress, and that they were spoken maliciously and with a view to defame. So that if the words spoken were pertinent to the matter in hand, the party and counsel may claim full immunity from an action of slander, however malicious might have been his motive in speaking them. So, too, if the words were not pertinent to the matter in issue, yet if the party spoke them *bona fide*, believing them to be pertinent, no action of slander lies."

*Clemmons v. Danforth*, 67 Vt. 617, 623, 32 A. 626, 628 (1895) (quoting *Mower v. Watson*, 11 Vt. 536, 539-40 (1839)).

The Letourneaus argue, however, that because the quality of the syrup was irrelevant to whether they had provided the Judds with consideration for use of the disputed land, the comments were not pertinent to the lawsuit. Again, we disagree. On the meaning of the term "pertinent" in this context, a leading commentator has noted:

It is the rule in England that the immunity exists as to any utterance arising out of the judicial proceeding . . . . Nearly all of the American courts, alarmed at the idea that a court of justice might become a place where extraneous defamation may be published with complete freedom, have said that there is no immunity unless the particular statement is in some way "relevant" or "pertinent" to some issue in the case. On this basis defendants have been held liable, for example, for entirely foreign and irrelevant defama-

tion of a person in no way involved in the suit. But it is generally agreed that "relevancy" does not mean that the statement must come within the technical rules of evidence, since a witness should not be required to determine at his peril whether his testimony may safely be given, or deterred by fear of suit from what he believes to be proper, and if he is asked a question, he may reasonably be expected to reply with anything reasonably responsive to it. Most of our courts have adopted what appears to be a standard of good faith, requiring only that the statement have some reasonable relation or reference to the subject of inquiry, or be one that may possibly be pertinent, with all doubts resolved in favor of the defendant — a conclusion which seems in effect to adopt the English rule.

W. Keeton, Prosser and Keeton on the Law of Torts § 114, at 817-18 (5th ed. 1984).

The allegedly slanderous comments in this case fell within this liberal standard and thus were privileged. The comments may not have been necessary to determine whether the Letourneaus gave the Judds some sort of consideration to repay them for the use of their trees, but they were reasonably responsive to questions referenced to that inquiry.

Finally, the Letourneaus argue that the superior court abused its discretion by granting the Judds' motion to dismiss their motion for relief from judgment without holding a hearing or making findings. The Letourneaus contend that the failure of the court to hold a hearing deprived them of an opportunity to develop evidence such as whether attorney Hickey's malpractice was attributable to his having represented Michael Judd's brother in a previous divorce action. Further, the Letourneaus assert that the failure of the court to make findings makes it impossible for this Court to know the basis of the superior court's decision and thus assess whether the court acted within its discretion in denying their motion. We agree that the court should have stated the basis for its decision, but we conclude that no remand is necessary because the Letourneaus' request under V.R.C.P. 60(b)(6) to reopen the boundary dispute is totally lacking in merit, see *A.M. Varityper v. Rabbo*, 146 Vt. 471, 474-75, 505 A.2d 671, 673 (1986) (trial court may summarily deny Rule 60(b) motion without hearing if it is frivolous or totally lacking in merit), and the reason the trial court denied the motion is manifest. Nothing in the Letourneaus' motion suggests the type of extraordinary circumstances that would allow the court to reopen a twenty-one-month-old civil judgment based on vague and speculative allegations of attorney malpractice. See *Carroll v. Abbott Labs.*, 654 P.2d 775, 778 (Cal. 1982) (except for extreme cases, client's redress for attorney's inexcusable neglect is limited to action for malpractice and may not be basis for obtaining relief from judgment); Annotation, *Incompetence of Counsel as Ground for Relief from State Court Civil Judgment*, 64 A.L.R.4th 323, 335-40 (1988) (general rule is that attorney incompetence is not ground for disturbing civil judgment, except in extraordinary circumstances).

*Affirmed.*