## Pomfret Farms Limited Partnership v. Pomfret Associates, James Monahan and Michael Giuliano

[811 A.2d 655]

No. 01-160

Present: Amestoy, C.J., Dooley, Morse and Johnson, JJ., and Kupersmith, D.J., Specially Assigned

Opinion Filed August 23, 2002
Motion for Reargument Denied October 11, 2002

*Richard I. Rubin* and *Kerry B. DeWolfe* of *Rubin, Kidney, Myer & DeWolfe*, Barre, for Plaintiff-Appellee.

*Anthony Z. Roisman* and *C. Daniel Hershenson* of *Hershenson, Carter, Scott & McGee, P.C.*, Norwich, and *James C. Gallagher* and *Carrie J. Legus* of *Downs, Rachlin & Martin, PLLC*, St. Johnsbury, for Defendants-Appellants.

**Morse, J.** Third-party defendants Pomfret Associates (PA), James Monahan and Michael Giuliano appeal from a jury verdict in favor of Pomfret Farms Limited Partnership (PFLP), finding them liable for negligent misrepresentation in the course of the sale of land. We reverse the judgment on the grounds that PFLP's claim is barred by the doctrine of res judicata.

This suit arises out of the sale of a parcel of land in Pomfret. James Monahan and Michael Giuliano are the managing partners of PA. Robert Sarvis is the general partner of PFLP and an experienced real estate developer. On December 19, 1988, PA, as seller, entered into a purchase and sale agreement with Robert Sarvis with respect to 423 acres of land in Pomfret. Sarvis subsequently assigned the purchase

and sale agreement to PFLP. The closing of the sale occurred on February 27, 1989, and PFLP paid $1.25 million for the property.

Sarvis stated that he intended to immediately develop the property into twenty-one residential lots. Sarvis admits that he knew there was no electricity available at the site at the time of closing. He assumed, however, that electricity would be available shortly and claimed that he would not have purchased the property otherwise.

In furtherance of the development, PFLP obtained a $2.3 million loan from the Proctor Bank. It also executed a real estate promissory note and mortgage in the amount of $350,000 to PA. PFLP subsequently defaulted upon its obligations under the note to PA.

On July 3, 1990, PA filed suit against PFLP to foreclose on the mortgage and to recover on the promissory note. PFLP did not file a responsive pleading despite being represented by counsel. On November 20, 1990, PA was granted a judgment of foreclosure on the mortgage, and awarded $411,528 on the note.

On March 6, 1991, Proctor Bank brought a separate foreclosure action against PFLP, joining PA as a party. On September 30, 1992, PFLP filed a cross-claim against PA, and Monahan and Giuliano individually, which forms the basis of this appeal. PFLP charged PA, Monahan and Giuliano with fraud and negligent misrepresentation regarding the availability of electricity to the Pomfret property.

Third-party defendants PA, Monahan and Giuliano filed a motion to dismiss PFLP's cross-claim on the grounds that it had been a compulsory counterclaim in the previous suit, and was barred under the doctrine of res judicata. The trial court denied the motion and allowed PFLP's claims to proceed. It reasoned that since the foreclosure was an action in rem, which lies only against the property, and did not subject PFLP to further liability, the counterclaim was not compulsory. After trial, the jury returned a verdict finding PA, Monahan and Giuliano liable to PFLP for negligent misrepresentation, but not for fraud.

On appeal defendants argue that PFLP's claims of fraud and negligent misrepresentation were compulsory counterclaims under V.R.C.P. 13(a), and are now barred by the doctrine of res judicata. We agree and reverse.

We first address the trial court's basis for denying defendants' motion to dismiss. Counterclaims are not compulsory under Rule 13(a) if "the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on [the] claim." V.R.C.P. 13(a). The court was

correct in stating that a foreclosure is an action in rem which does not impose personal liability on a defendant. See *LaFarr v. Scribner*, 150 Vt. 159, 160-61, 549 A.2d 651, 652-53 (1988) (holding that the defendant in a foreclosure action was not barred from raising affirmative defenses in a subsequent suit on the underlying note). The mortgage and the note are distinct, however, and, while the mortgage does not impose any personal liability on the defendant, a personal obligation is imposed on the underlying note. *Id.* at 161, 549 A.2d at 652-53. Here, PA sued on the note *as well as* the mortgage. It was not strictly a foreclosure action. Because the suit was also on the note, it subjected PFLP to personal liability, and, thus, the trial court erroneously denied defendants' motion by treating PA's suit solely as one of foreclosure. Accordingly, res judicata may bar PFLP's claims if they were compulsory counterclaims to the action on the *note* under Rule 13(a).

V.R.C.P. 13(a) states that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." This Court has adopted the "logical relation test" to determine what constitutes the same transaction or occurrence. *Stratton v. Steele*, 144 Vt. 31, 35, 472 A.2d 1237, 1239 (1984).

> "[A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

*Id.* (quoting *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970)) (alteration and emphasis in original); see also *Letourneau v. Hickey*, 174 Vt. 481, 483, 807 A.2d 437, 440 (2002) (mem.) (holding plaintiff's claim for legal malpractice was compulsory counterclaim that should have been brought when defendant attorney brought earlier action to collect unpaid legal fees stemming from representation giving rise to malpractice claim). Courts have noted that the words "transaction or occurrence" should be interpreted liberally. See, e.g., *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977) ("As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much

upon the immediateness of their connection as upon their logical relationship.").

PFLP argues that its misrepresentation claim is not compulsory because it fails the "logical relation" test. We find this argument unpersuasive. PFLP's misrepresentation claim is logically related to PA's action to recover upon the promissory note. A single transaction serves as the basis for both suits; the mortgage and note sued on by PA secured the Pomfret property which PFLP claims to have purchased in reliance upon misrepresentations made by PA. This single transaction provides the basis for both claims, and gives rise to potential liabilities on both sides. As such, the claims satisfy the logical relation test, and PFLP's claim was compulsory under V.R.C.P. 13(a). See *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 55-57, 539 A.2d 534, 536 (1987) (counterclaim alleging fraud was compulsory in a suit for payment of a promissory note); see also *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45-46 (2d Cir. 1961) (fraudulent inducement counterclaim in suit for breach of equipment lease was compulsory).

Despite there being a compulsory counterclaim, PFLP failed to assert claims for fraud or negligent misrepresentation, or even to raise them as affirmative defenses to PA's suit. A failure to raise a compulsory counterclaim will result in a bar to future litigation of the claim. *Stratton*, 144 Vt. at 34-35, 472 A.2d at 1239. Res judicata bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the "parties, subject matter and causes of action are identical or substantially identical." *In re CVPS*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) (internal quotation marks and citation omitted). The doctrine applies both to affirmative defenses that could have been raised before, and to compulsory claims that should have been raised. *Id.* The purpose of the res judicata doctrine is to promote the finality of judgments and conserve the resources of courts and litigants. "[I]nvocation of res judicata . . . relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982) (internal quotation marks and citation omitted). As such, PFLP's present claims are barred.

Nevertheless, PFLP argues that Monahan and Giuliano were not parties to the first action, which was brought by PA in its capacity as a partnership, and thus no counterclaim could have been filed against them individually. This Court has held that identity of parties

exists where the parties or their privies are involved in both actions. *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 735 (1996). A privity relationship generally involves a party so identified in interest with the other party that they represent one legal right. *First Wisconsin Mortgage Trust v. Wyman's, Inc.*, 139 Vt. 350, 358-59, 428 A.2d 1119, 1124 (1981).

Traditionally, when a plaintiff brings suit in one capacity, the defendant may not counterclaim against the plaintiff in a different capacity than that in which plaintiff sued. 3 Moore's Federal Practice ¶ 13.90[2][d] (2002). Courts have noted two exceptions to the traditional rule, however.

> First, if a plaintiff has sued in a representative capacity but will benefit individually from any recovery, a counterclaim may be made against the plaintiff in his individual capacity. Second, a counterclaim may be made against a plaintiff in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim.

*Blanchard v. Katz*, 117 F.R.D. 527, 529 (S.D.N.Y. 1987). Monahan and Giuliano, as general partners of PA, were entitled to share in its profits and losses, and were jointly liable for its actions. 11 V.S.A. §§ 3226 & 3231; see *Scott v. United States*, 354 F.2d 292, 300-01 (Ct. Cl. 1965) (allowing counterclaim against individual members of partnership, and noting that "judgments rendered on partnership demands result in an immediate pro rata gain to the individual partners, since they actually own the claim in most senses").

To find that Monahan and Giuliano, as partners, are somehow distinct from the partnership, and not parties to the first suit, would frustrate the purposes of finality and economy behind the res judicata doctrine. Further, such a distinction allows an individual partner to "veto the maintenance of an individual counterclaim against him . . . and affords partners a technical, artificial device for proliferating litigation and possibly escaping valid demands against them." *Scott*, 354 F.2d at 300 (rules should not be read as "permitting partners to avoid individual counterclaims by the simple expedient of bringing the action in the name of the partnership and omitting their own names entirely"). *Id.* at 299.

█ This Court has traditionally looked past nominal differences in determining the identity of parties. "Whenever in these cases the identity of parties is the question, the court will look into the situation far enough to ascertain who are the real parties, and give effect to the

former judgment accordingly." *Cutler v. Jennings*, 99 Vt. 85, 90, 130 A. 583, 584 (1925). Here, Monahan and Giuliano together form the partnership that sued PFLP. Their potential to share in the benefits, and losses, of the partnership identifies them and PA as parties in privity. We have stated that, "[i]f the parties are really and substantially in interest the same, though nominally different, the judgment binds them." *Id.*; see also *Scott*, 354 F.2d at 299 ("The salutary objectives of the counterclaim rules should not turn on the sequence of the names in the pleadings . . . ."). Monahan and Giuliano are in privity with the partnership and qualify as opposing parties under V.R.C.P. 13(a).

PFLP's reliance on *Leon Templesman & Son v. TECC Corp.*, 107 F.R.D. 384 (N.D. Tex. 1985), for a holding to the contrary is misplaced. In *Templesman*, the court did not allow a permissive counterclaim against an individual suing in the capacity of a *limited* partnership. *Id.* at 385. The court distinguished *Scott* on the grounds that it had involved a general partnership, not a limited one, and furthermore found that the asserted counterclaim would involve issues and parties unrelated to the original suit. *Id.* In this case, we have a compulsory counterclaim which does not raise issues unrelated to the sale of the Pomfret property, and is against a general, not limited, partnership.

PFLP next argues that, because PA's action resulted in a default judgment against PFLP, it can be no bar to the present suit. PFLP relies heavily upon the reporter's notes to Rule 13(a) which state that a defendant who defaults prior to filing an answer is not barred from bringing a later independent action. Reporter's Notes, V.R.C.P. 13. Nevertheless, we have recently held that "courts have given default judgments full effect and have held that a [compulsory] counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits." *Letourneau*, 174 Vt. at 483, 807 A.2d at 440 (internal quotation marks and citation omitted). In *Letourneau*, the plaintiffs failed to file a responsive pleading on a collection action brought by their attorney for unpaid legal fees, and suffered a default judgment. *Id.* at 482, 807 A.2d at 439. Twenty-one months later, the plaintiffs brought a malpractice suit against their attorney. *Id.* We held that, under those circumstances, the default judgment in the previous action barred their malpractice claim under res judicata. *Id.* at 483, 807 A.2d at 440. We also declined to follow the reporter's note to the extent that it was inconsistent with that holding. *Id.*

■ Further, the purposes behind the res judicata doctrine are served by allowing a default judgment to bar a later suit. To hold otherwise would render a default judgment "of uncertain value, and represent simply one step toward resolving the dispute between the parties." *Carteret Sav. & Loan Ass'n v. Jackson*, 812 F.2d 36, 38 (1st Cir. 1987) ("Instead of having a truly final judgment, the judgment creditor would remain faced with a prospect of litigating other aspects of the same transaction or occurrence at some later time, and in a forum of the defendant's choosing."). Given our recent stand on this issue, the default judgment suffered by PFLP suffices to bar the present suit. Like the judgment against the defendants-turned-plaintiffs in *Letourneau*, the judgment in the prior suit against PFLP resulted from its failure to respond, as opposed to a consent decree or stipulation. See *Cianciolo v. Lauer*, 819 S.W.2d 726, 727 (Ky. Ct. App. 1991) ("when one is duly summonsed and suffers a default, he not only loses his right to defend in that litigation, but also his right to assert in an independent action a claim deemed to have been a compulsory counterclaim" under Rule 13), cited in *Letourneau*, 174 Vt. at 483, 807 A.2d at 440.

PFLP's final contention is that Sarvis was unaware of the facts giving rise to his claim at the time of PA's suit, and since he had not discovered his cause of action he could not bring a counterclaim. Sarvis admits, however, that by the middle of 1989 he knew that electricity was not immediately available to the property. He represents himself as an experienced real estate developer, and had purchased the Pomfret property with the intention of immediately developing it into residential lots. Given Sarvis's experience and intentions, we hold that Sarvis was on inquiry notice as to the availability of electricity, and as such "he is chargeable with notice of all such facts as his inquiry, had it been made, would have revealed." *Tomasi v. Kelley*, 100 Vt. 318, 323, 137 A. 196, 198-99 (1927); see also *Richart v. Jackson*, 171 Vt. 94, 98-100, 758 A.2d 319, 322 (2000) (existence of dock at time defendants purchased beach front property put them on inquiry notice as to interests of neighboring property owners). The duty imposed by inquiry notice arises "when such information is known which would prompt a person exercising reasonable care to acquire knowledge of the fact in question." *Amjems, Inc. v. F.R. Orr Constr. Co.*, 617 F. Supp. 273, 278 (S.D. Fla. 1985).

Sarvis knew at the time of purchase that there was no electric power immediately available to the site. At the time of PA's suit in July 1990,

over a year after closing, PFLP had every opportunity to ascertain the facts underlying its claims of fraud and negligent misrepresentation.

Since we hold that PFLP's claims of fraud and misrepresentation are barred by res judicata,\* we need not reach defendants' other arguments on appeal.

*Reversed.*

---

\* PFLP attempts to argue that — despite PA's arguments in its motion to dismiss regarding res judicata, its interlocutory appeal on the issue of whether res judicata barred the current suit, and the present appeal — PA's attorney affirmatively waived this issue at trial when he stated in the course of oral arguments that it was "a judgment call by the court." We find no merit to this argument.