STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Huntington Remodeling Application | } | Docket No. 210-10-07 Vtec |
| | } | |

## Decision on Multiple Motions

Appellant-Applicant George Huntington ("Applicant") has appealed a decision of the Town of Newbury Planning Commission ("Planning Commission"), denying Mr. Huntington's zoning application for authority to remodel part of his multi-family building. Applicant is represented by Mark D. Nemeth, Esq. Appellee Town of Newbury ("Town") is represented by Charles D. Hickey, Esq.

Applicant and the Town have filed cross-motions for summary judgment. Applicant has also filed a motion to clarify his initial Statement of Questions, to which the Town has replied with an objection. We address all pending motions in this Decision.

## Factual Background

For the sole purpose of putting the pending motions in context, we recite the following material facts, which are undisputed unless otherwise noted:

1.      In 1988, Applicant bought a multi-family building ("Building") located at 9 Creamery Street in the Wells River Commercial Zoning District ("WRC District").

2.      At the time that Applicant bought the Building in 1988, it contained three residential apartments. Since that time, it is unclear how many apartments the Building has contained, and whether these apartments have remained in use. The parties dispute whether the third apartment was abandoned for more than one year.

3.      The Town Listers' records for 1993, 1994, and 1996 describe the Building as containing only two residential apartments.

4.      Applicant filed a grievance over the appraised value for the Building for the 1998 tax year. It is unclear from the record now before us whether Applicant's tax grievance was successful. However, the 1998 Listers' records reflect that the Building only contained two residential apartments at that time. (See Exhibit 4 attached to the Town's Statement of Material Facts.)

5.      The Town Listers also inspected Applicant's Building in 2007.  While the 2007 Listers' records include a hand-written notation that says "After grievance," we have not been advised of whether this note is in reference to Applicant's 1998 tax grievance or to some more recent grievance.  Nonetheless, apparently after the Listers' 2007 inspection, the Building was reported to contain only two residential apartments.

6.      Applicant has provided credible documentation concerning substantial repairs that were made while the Building contained three apartments.  The Town has not contested that Applicant caused these repairs to be made to his Building.  However, Applicant's affidavits do not contradict the Town's assertion, substantiated by the Listers' cards and affidavits, that the Building was actually used as a two-apartment structure for at least some amount of years.

7.      In April 2007, the Town's Zoning Administrator learned that Applicant was remodeling the Building.  The Town described this work as "construct[ing] a third residential unit."  (Town's Statement of Material Facts at #9.)  Applicant disputes this characterization and states that he was merely remodeling an apartment that already existed.

8.      On May 2, 2007, the Zoning Administrator notified Applicant that he needed site plan approval from the Planning Commission before he could build or use a third residential apartment in the Building.

9.      On June 19, 2007, the Zoning Administrator issued a notice of violation, which was then superseded by a June 27, 2007 notice of violation, which alleged that Applicant was reestablishing a non-conforming use (i.e., the third apartment in the Building) without the needed site plan approval.  Applicant did not appeal either notice of violation.

10.     On July 3, 2007, Applicant submitted an application,[1] requesting authority to "Remodel apt #3 with new kitchen, bath, liv. rm + 2 bedrooms."  The application included a "Schedule B: Site Plan Review" form, which noted that Applicant's project would require additional septic and water services and that it would impact traffic by adding four parking spaces to the rear of the

---

[1]  We note that the form provided to Applicant by the Town does not have a specific title.  Rather, the text at the top of this form directs that this form "serves an as application for all requested zoning reviews."  (See Exhibit 10 attached to the Town's Statement of Material Facts.)  The Town argues that Applicant would be entitled to maintain a three-apartment facility, once he obtained site plan approval, but that because Applicant failed to apply for site plan approval, the Town is entitled to summary judgment.  But we are left to wonder what further application or information an applicant seeking site plan approval is required to provide, particularly given the application form used here and the site plan data Applicant provided.

2

building. This form also stated that the project was not expected to have any impact on noise levels in the area, but that it could affect school enrollment depending on the tenants.

11. On July 26, 2007, the Planning Commission held an initial hearing on Applicant's request. The Commission then continued its review of Applicant's request during its August 23, 2007 hearing.

12. On August 31, 2007, the Planning Commission denied Applicant's application. The Planning Commission issued the following four Findings of Fact as the complete basis for its decision:

1. The property in . . . question at 9 Creamery Street was placed in violation by the Zoning Administrator. The violation consisted of re-establishment of a non-conforming use.
2. The applicant did not appeal the decision of the Zoning Administrator within the statutory 15 days.
3. Since the decision of the Zoning Administrator was not appealed, the decision stands.
4. Therefore there is no apartment #3 as stated in the application.

Planning Comm'n, Application for Site Plan Approval: Findings and Decision, Permit Application No. 2007-059, at 1–2 (Aug. 31, 2007) ("Planning Commission's Decision").

13. Applicant thereafter filed a timely appeal of the Planning Commission's Decision with this Court.

## Discussion

Although the parties filed cross-motions for summary judgment before Applicant made a motion to amend the Statement of Questions, we must address these issues in the opposite order. After all, the Statement of Questions limits the scope of the appeal before us. V.R.E.C.P. 5(f).

### A. Motion to Amend the Statement of Questions

Applicant initially submitted two questions in his Statement of Questions. In a subsequent filing, Applicant voluntarily agreed to withdraw Question 1. (Applicant's Reply in Opp'n to Town's Mot. Summ. J. at 4.) Question 1 is therefore **DISMISSED**.

All that now remains from Applicant's initial Statement of Questions is Question 2, which asks, "Is the Newbury Planning Commission required to consider Permit Application 2007–059 for remodeling of the lawful pre-existing non[-]conforming Apartment #3 at the subject property?" Applicant now asks this Court to amend his Statement of Questions by replacing Question 2 with the following two questions:

3

1. Did the Newbury Planning Commission breach [its] obligations to provide Appellant with procedural and substantive due process under state and local zoning laws when it denied Permit Application 2007-059?

2. Is the Newbury Planning Commission required to consider [on] the merits Permit Application 2007-059 for remodeling of the subject property and subsequently enter findings in support of a final decision?

(Applicant's Mot. to Clarify Appellant's Questions on Appeal at 3.)

This Court has previously noted that motions to amend a Statement of Questions (like motions to amend a complaint) should "be liberally granted, . . . [but] only . . . when they do not prejudice the other parties." Appeal of Town of Fairfax, No. 45-3-03 Vtec, slip op. at 5 (Vt. Envtl. Ct. June 13, 2005) (Wright, J.) ("Fairfax"); accord Appeal of Osherenko, No. 79-5-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. June 22, 2005) (Durkin, J.). We must therefore look at whether granting Applicant's motion to amend would prejudice the Town.

The Town argues that it would be prejudiced if this Court were to grant Applicant's motion to amend. In particular, the Town correctly notes that it has already spent considerable resources addressing the issues raised in the initial Statement of Questions. The Town's claim of prejudice also finds support in the fact that Applicant filed his motion to amend on June 18, 2008, which is more than seven months after the filing of the initial October 29, 2007 Statement of Questions.

We have previously found prejudice to another party (and therefore denied a motion to amend) in cases where the motion to amend was made, for instance, "not only after the trial, but after the decision was issued." Appeal of Albert et al., No. 110-6-03 Vtec, slip op. at 4 (Vt. Envtl. Ct. Mar. 21, 2006) (Wright, J.) ("Albert"). We have also found prejudice when a motion to amend is made by a party that had already amended its questions once and that had also already lost on summary judgment. See Fairfax, No. 45-3-03 Vtec, slip op. at 5. Applicant's motion to amend here is not as problematic as the motions in Albert or Fairfax because Applicant made his motion before this Court issued any decision in this case (either on the merits or on summary judgment). Further, although Applicant's motion to amend was filed many months after the filing of his original Statement of Questions, we have previously allowed parties to amend a statement of questions at similarly late times in the proceedings. See, e.g., Fairfax, No. 45-3-03 Vtec, slip op. at 6 (recognizing the validity of an initial amendment that was made "about six months after filing the initial statement of questions"). Applicant has also provided a reasonable explanation for the delay in filing his motion to amend. We can therefore say that

4

this motion was not "'unreasonably delayed.'" Appeal of Osherenko, No. 79-5-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. June 22, 2005) (Durkin, J.) (citing Stratton v. Steele, 144 Vt. 31, 36 (1984)); accord In re Guardianship of L.B., 147 Vt. 82, 84 (1984) (noting that approval of an amendment is generally granted when it "is neither frivolous nor made as a dilatory maneuver or in bad faith"). We therefore conclude that to **GRANT** Applicant's motion to amend his Statement of Questions is a proper exercise of our discretion.

We also note that the issues raised by Applicant's amended Statement of Questions are closely related to the issues raised in the initial Statement of Questions. This provides yet another reason that granting Applicant's motion to amend would not create undue prejudice to the Town. From the beginning, Applicant has generally asked this Court to evaluate the validity of the Planning Commission's Decision to deny Applicant's permit application on the basis of the un-appealed notice of violation. Applicant has never asked this Court (in either the original or the amended Statement of Questions) to hold that Applicant's permit application should have been granted. Rather, the only remedy that Applicant seeks is that we set aside the Planning Commission's Decision to deny the permit. In both Questions of the amended Statement of Questions, Applicant seeks a remand to the Planning Commission to decide this issue on the merits. We view the constitutional issues raised in Question 1 of the amended Statement of Questions as just another way of arguing that the Planning Commission should have considered Applicant's permit application on its merits. Thus, the only question that is properly before this Court is whether to remand Applicant's permit application to the Planning Commission, and we can decide upon that key issue today. For all of these reasons, we find that the Town will not be unduly prejudiced if we grant Applicant's motion to amend his Statement of Questions.

### B. Cross-Motions for Summary Judgment

In reviewing the decision that was before the Planning Commission, we look at the issue de novo. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); see also 24 V.S.A. § 4472(a). This means that while we have the utmost respect for the Planning Commission and its individual members, we should not defer to the specific determination that is now before us on appeal. Rather, we are directed to make an independent evaluation by considering the matter "'as though no action whatever had been [previously] held.'" Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)).

Each party has asked this Court to grant summary judgment in its favor. We may only grant summary judgment when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). Generally, the burden of proof is on the party requesting summary judgment. Chapman v. Sparta, 167 Vt. 157, 159 (1997). When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the motion under consideration. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

As mentioned above, Applicant's amended Question 2 addresses the heart of Applicant's overall prayer for relief—namely, that Applicant's zoning request should not be denied merely because of a zoning violation that became final when Applicant failed to appeal it within 15 days. Although the parties disagree on whether the Planning Commission erred when it made its Decision, the parties appear to be in agreement as to what the Planning Commission should do going forward. The Town concedes that Applicant has a right to have the Planning Commission evaluate Applicant's request for site plan approval of a three-unit building, although the Town argues that Applicant must first submit a new permit application.

Section 4.12.1.5 of the 2007 Newbury Zoning Regulations ("Regulations") recognizes a multi-unit dwelling of less than five units as a permitted use in the WRC District.[2] At the same time, Regulations § 2.9 requires site plan approval from the Planning Commission before a zoning permit may issue for any use or structure involving three or more residential apartments. It appears as if Applicant implicitly asked the Planning Commission for the required site plan approval, and to date the Planning Commission has not evaluated the merits of that request. In short, to the extent that the Town believes that a further application or supporting materials are required from Applicant before the Planning Commission may conduct a review of Applicant's site plan request, the Town has left us to wonder what further is required.

The disagreement in this case also stems from Applicant's decision to use the word "remodel" when describing his plans for a third apartment in his Building. The word "remodel" implies that site plan approval for the third apartment already existed; this apparently led the

[2] Similarly, section 4.10.1.5 of the 2006 Newbury Zoning Regulations also recognizes such buildings as a permitted use. We cite to the 2007 Regulations throughout this decision because those are the regulations that were in effect at the time that Applicant submitted his permit application on July 3, 2007.

6

Planning Commission to deny Applicant's permit application summarily by noting that "there is no apartment #3 as stated in the application." Planning Commission's Decision at 2. The Town explains the situation as follows:

> The Town does not dispute th[e] fact that the [Applicant] had the right to apply for a permit to add a third unit in the building. See [In re] Newton Enterprises, 167 Vt. 459[, 463] (1998). However, this is not what the [Applicant] did. Rather, he filed a permit to remodel the third unit. This application assumed that the third unit was grandfathered[,] which it was not. It was for this reason that the [P]lanning [C]omission denied his request.

(Town's Mot. Summ. J. at 4 (parallel citation omitted).) The Town's position that Applicant "did not seek a permit for a third unit" (Town's Statement of Material Facts at #16) appears at odds with the direction on the Town-supplied application form that it is to be used "for all requested zoning reviews" (Town's Exhibit 10). We are left to wonder whether the Planning Commission would have evaluated the merits of Applicant's request for site plan approval if Applicant had used the words "site plan" or "construct"—rather than "remodel"—in his application.

The Town correctly notes that Applicant currently needs site plan approval to do the work necessary to operate a third apartment within his Building. The Zoning Administrator issued a notice of violation on June 27, 2007, and Applicant failed to appeal that violation within 15 days. As a result, the fact of the violation—namely, the fact that the third apartment, while it may have once been a lawful, pre-existing, non-conforming use, became an illegal use once discontinued for more than one year—cannot now be challenged, either directly or indirectly, in any subsequent proceeding, including this one. See, e.g., City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588–89 (2000) (mem.).

Nevertheless, as the Town concedes and as our Supreme Court has held, the fact that a violation exists does not prevent Applicant "from seeking a permit to make its . . . uses lawful." In re Newton Enters., 167 Vt. at 463. Applicant claims that he has done precisely this by submitting the application now before us. Although Applicant should have used the words "site plan" or "construct" rather than "remodel," this mistake is understandable, given that Applicant was not actually constructing a new building. We also note that it is unfair to expect permit applications to be filled out with the type of precision that lawyers might use when completing applications themselves. At times, even experienced lawyers (and judges) do no better.

Applicant filled out the application here without legal assistance, and Applicant did an adequate (if not perfect) job of conveying the approval that he sought. Further, we conclude that there is no evidence before us that Applicant purposefully made his zoning application misleading. Rather, Applicant made it clear that he wished to complete remodeling work on a third apartment in his Building. The Planning Commission had before it a form labeled "Schedule B: Site Plan Review," which noted that Applicant's project would require additional septic and water services and that it would impact traffic by adding four parking spaces to the rear of the building. This form also noted that the project could affect school enrollment, depending on the tenants for the third apartment. These effects would only arise from increasing the number of tenants in the Building The Town was therefore on notice, albeit in a less than clear manner, that Applicant proposed to expand the use of his Building by adding tenants to a third apartment in the Building.

For all of these reasons, the Planning Commission had a duty to evaluate whether to provide site plan approval for Applicant's proposal for a third residential apartment in his Building. The Planning Commission never evaluated Applicant's permit application in this light. The Planning Commission's Findings only mention the Zoning Administrator's notice of violation and Applicant's failure to appeal that violation. The Findings of Fact ignore the possibility that the notice of violation does not prevent Applicant "from seeking a permit to make its . . . uses lawful." In re Newton Enters., 167 Vt. at 463.

We hold that Applicant was seeking site plan and zoning approval when he submitted his application. The Town's application form specifically states that although additional information and permits might be required, the form "serves as an application for all requested zoning reviews." The Town therefore had a duty to review the application in this light. Thus, we hereby **VACATE** the Planning Commission's August 31, 2007 Decision and **REMAND** the pending application to the Town of Newbury Planning Commission for consideration of Applicant's request for site plan and zoning approval to construct and use a third residential apartment in his Building. Nothing contained in this Decision should be regarded as restricting the Planning Commission from requesting or receiving additional documentation in support of the application.

## CONCLUSION

Question 1 of Applicant's Statement of Questions is **DISMISSED**, and we **GRANT** Applicant's motion to replace Question 2 with the two Questions listed in Applicant's amended Statement of Questions.

As a consequence of our determinations on the pending cross-motions for summary judgment, we hereby **VACATE** the Planning Commission's August 31, 2007 Decision and **REMAND** the pending application to the Planning Commission to consider Applicant's request for site plan and zoning approval for a third residential apartment in his Building.

This completes the proceedings on the pending application before this Court. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 5th day of November 2008.

_____
Thomas S. Durkin, Environmental Judge